**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SEAN MCCORMACK,** | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. 3:17-0407** |
| **v.** | : | |
| **MARVIN LIVERGOOD,** | : | **(JUDGE MANNION)** |
| **Defendant** | : | |

## MEMORANDUM

Presently before the court is the motion for summary judgment filed by remaining defendant Marvin Livergood, Chief of the Frackville Borough Police Department, against plaintiff Sean McCormack. (Doc. 22). The plaintiff filed his civil rights action pursuant to 42 U.S.C. §1983 and alleged violations of his Fourth and Fourteenth Amendment rights related to his arrest and prosecution by Chief Livergood for the theft of money for small games of chance sold by the Frackville American Legion. The plaintiff also asserted state law claims for malicious prosecution and intentional infliction of emotional distress. The defendant now moves for summary judgment with respect to all of the claims in the plaintiff's complaint, (Doc. 1), against him. The defendant's motion will be **GRANTED** with respect to the plaintiff's Fourth and Fourteenth Amendment claims. The court will decline to exercise supplemental jurisdiction over the plaintiff's two remaining state law claims.

## I.    MATERIAL FACTS[1]

Plaintiff was employed with the Pennsylvania Department of Corrections at SCI-Frackville, Schuylkill County, Pennsylvania. In September of 2011, after being a life member of the American Legion, plaintiff was elected as the Treasurer/Steward of the American Legion Post Home Association (the "Legion") in Frackville. Plaintiff held this position at the Legion in addition to his job at the prison. As Steward, plaintiff also became Bar Chairman of the Legion and his duties included the daily management and oversight of the Legion Canteen, i.e., the bar, the register, as well as the small games of chance. Plaintiff was also responsible for collecting money from the pull tab machines at the Legion Canteen. Prior to serving as Bar Chairman, plaintiff had no experience working with pull tab games or with small games of chance. Plaintiff, along with other employees at the VFW, including Joseph Katilas, the President of the Legion, and some bartenders, had access to the vending machine, pull tab small games of chance, the money from the pull tab games, and the records. Plaintiff was also  responsible for record keeping functions of the Canteen as well as the bartenders.

Plaintiff remained in the position of Steward at the Legion until about November of 2012, when he testified that he was voted out during a change of administration. The record also reveals that plaintiff was removed from his

_____

[1]The material facts are derived from the defendant's statement of facts, the exhibits of both parties, and the plaintiff's responses. The court does not include legal conclusions and legal arguments in the material facts.

position with the Legion and permanently expelled from the Legion in February of 2013 for violations of its rules and by-laws. (Doc. 24, Ex. M).

Peter Kostingo was elected to replace plaintiff as Steward of the Legion on November 10, 2012. Kostingo noticed some discrepancies with the Legion's accounts and requested an audit by the Legions' accountant, Norman Lettich. Initially, the audit did not reveal any discrepancies. Thus, Lettich issued his first report dated October 5, 2012, in he found no irregularities. Subsequently, Kostingo discovered that the records for the small games of chance were missing. Based on some of the records for the small games of chance which Kostingo eventually found, i.e., pull-tab invoices, he believed that money was missing from the Legion's account. In addition to the monetary discrepancy between sales and deposits, records for the small games of chance and keys of the Legion were also missing.

Lettich was then asked by the Legion's officers to perform an additional audit due to issues with revenue for the small games of chance and they provided Lettich with the Legion's sales records and invoices. Based on the records he received, Lettich discovered a $45,006.92 discrepancy "in the bar sales and [the deposits for the] small games of chance based on [his] comparison of income to deposits" during plaintiff's tenure as Steward and Bar Chairman. (Doc. 28-5). Lettich then issued a second report dated May 29, 2013, in which he concluded that $45,006.92 was missing from the small games of chance between January 1, 2012 and October 31, 2012. Additionally, Lettich stated that although he believed money was missing from

3

the Legions' account, he did not know who took it.

However, the records Lettich was provided were not complete and some of his assumptions were inaccurate. For example, the records Lettich received did not include the invoices and credits from Total Amusement for the return of unused pull tabs and, his numbers erroneously assumed that every box of pull tabs was used. Further, Lettich was not provided with plaintiff's records that plaintiff had kept. Lettich subsequently testified in his deposition regarding the instant case that the invoices and the information with respect to credits would have changed his conclusion about the amount of monetary discrepancy in the Legion's account. In fact, plaintiff later testified in his deposition taken for the instant case that the credits accounted for $28,000 of Lettich's calculations. Further, Lettich testified that he did not know that plaintiff had destroyed some pull tab tickets for a legitimate reason.

Based on Lettich's report and the information he received from Kostingo, Katilas and Legion member John Mellon, defendant Livergood initiated criminal charges against plaintiff regarding the theft of money related to the sales of the pull tab games and the small games of chance at the Legion. Defendant however did not interview plaintiff regarding the allegations of missing funds at the Legion and he did not search plaintiff's bank accounts before he filed criminal charges against plaintiff.

Specifically, on December 13, 2013 defendant filed a criminal complaint charging plaintiff with theft related crimes, supported by his affidavit of

4

probable cause, with Magisterial District Judge Christina Hale.[2] On December 17, 2013, Judge Hale arraigned plaintiff on the charges filed against him by defendant.

Plaintiff's preliminary hearing on the charges filed against him by defendant was scheduled for March 5, 2014, before Magistrate Hale. Schuylkill County Assistant District Attorney Gary D. Marchalk was the prosecutor at the preliminary hearing. Marchalk reviewed the charges and spoke to the witnesses. Defendant also provided his records to Marchalk to review. Before the preliminary hearing commenced, Marchalk directed defendant to withdraw all of the charges against plaintiff since "there was not enough evidence to proceed."

After the charges against him were withdrawn, plaintiff left his job on early retirement at SCI-Frackville in August of 2014, and sold his house. Plaintiff then he relocated to California.

Subsequently, defendant discovered additional evidence at the Legion, namely, a cigar box of pull-tab game receipts. Defendant provided these receipts to Lettich to review. However, defendant did not give Lettich the plaintiff's records he maintained of the daily ticket sales, as well as his records of winnings and losses, which the plaintiff had previously provided to Marchalk on March 5, 2014. Defendant had no explanation as to why he failed to provide Lettich with plaintiff's records for review before he filed the second set

---

[2]Since defendant's affidavit of probable cause has been submitted as an exhibit, (Doc. 24-7), its averments shall not be repeated herein.

of charges against plaintiff. (Doc. 28-5 at 15).

On March 6, 2015, one year and one day after the initial charges against plaintiff were withdrawn, defendant re-filed a criminal complaint against plaintiff. (Doc. 24-7). The re-filed criminal complaint contained the same charges that were alleged in the December 13, 2013 complaint and defendant's affidavit of probable cause was exactly the same as his original affidavit. Specifically, the felony charges in both the December 13, 2013 and the March 6, 2015 criminal complaints filed against plaintiff were theft by unlawful taking, receiving stolen property, and theft by failure to make required disposition of funds. The complaints also contained one misdemeanor charge of tampering with records.

The March 6, 2015 re-filed criminal complaint did not contain an approval signature from anyone in the Schuylkill County District Attorney's Office. The evidence is disputed as to whether the refiling of the charges against plaintiff required the approval of the Schuylkill County District Attorney's Office and whether this Office approved of the refiling of the charges. Schuylkill County Assistant District Attorney Jonathan Phillips averred that he directed defendant to re-file the charges against plaintiff in March of 2015. However, the record is not clear if the Schuylkill County District Attorney, Christine Holman, gave Phillips the authority to approve of the re-filing of criminal charges. Holman testified in her deposition that her Office did not approve of the refiling of the charges against plaintiff, and that defendant did not seek her written approval before he re-filed the charges. In

6

fact, Holman sent a latter dated August 13, 2014 to the solicitor for Frackville Borough, with a copy sent to the defendant, stating that "much more evidence" was needed before filing charges against plaintiff. (Doc. 28-2).

Nonetheless, Phillips averred that he would have had a discussion with Holman and would have received her approval before he told the defendant to re-file the charges against the plaintiff. Defendant testified that Phillips called him and said that he spoke to Holman. Defendant then stated that Phillips told him to re-file the charges against plaintiff. However, in contradiction of Phillips, Holman testified that Phillips never had authority to approve any criminal charges, including authority to approve of defendant's re-filed charges against plaintiff.

Defendant never notified either the plaintiff or his counsel about the re-filed criminal charges. When plaintiff discovered that defendant had re-filed the charges against him, he voluntarily returned from California to Frackville and surrendered himself before Magistrate Hale on September 2, 2015, for an arraignment.

Plaintiff's preliminary hearing regarding the March 6, 2015 criminal complaint was held on November 25, 2015 before Magistrate Hale. (Docs. 31-1, 31-2). The Commonwealth presented three witnesses at the hearing. At the conclusion of the hearing, Magistrate Hale determined that the Commonwealth had established a prima facie case on all charges against plaintiff except for the tampering with evidence charge, i.e., the misdemeanor charge, and all of the felony charges were bound over for trial to the Schuylkill

7

County Court of Common Pleas.

On January 15, 2016, plaintiff filed pre-trial motions with the Schuylkill County Court seeking the dismissal of the charges against him, including a motion for violation of his right to a speedy trial under Pa.R.Crim.P. 600 by failing to bring his case to trial within one year from March 5, 2014, as well as a petition for writ of habeas corpus.

Judge Cyrus P. Dolbin of the Schuylkill County Court conducted a hearing on plaintiff's pre-trial motions. On March 7, 2016, Judge Dolbin issued an Opinion and Order in which he granted both of plaintiff's pre-trial motions. Judge Dolbin found that the Commonwealth had failed to use due diligence in re-filing the criminal charges against plaintiff and that the charges were subject to dismissal as untimely. Judge Dolbin also found that "the Commonwealth's evidence was insufficient to show that [the plaintiff] was properly charged with theft" and that its evidence was "insufficient to establish probable cause on any of the remaining crimes charged [against plaintiff]." In particular, Judge Dolbin found that the charges against the plaintiff were "based on mere speculation and assumption." (Doc. 28-5). Thus, the criminal proceeding and all of the charges which defendant initiated against plaintiff in the March 6, 2015 criminal complaint were dismissed by Judge Dolbin.

## II.     PROCEDURAL HISTORY

The plaintiff filed his complaint on March 3, 2017, (Doc. 1), claiming damages arising from the defendant's arrest and prosecution of him. The

plaintiff's complaint contains four counts against defendant Livergood, including a malicious prosecution claim under §1983 for violations of his Fourth Amendment rights, Count One, a malicious prosecution claim under §1983 for violations of his Fourteenth Amendment procedural due process rights, Count Two, as well as state law claims for malicious prosecution, Count Five, and for intentional infliction of emotional distress ("IIED"), Count Six.[3]

As relief, the plaintiff requests monetary damages, including punitive damages, with respect to his claims against the defendant.[4] The plaintiff also seeks attorneys' fees and costs under 42 U.S.C. §1988.

On May 25, 2018, defendant filed a motion for summary judgment with respect to all four of plaintiff's claims against him. (Doc. 22). Defendant's motion was fully briefed, a statement of material facts was filed as well as plaintiff's responses, and exhibits were submitted by both parties.

This court has jurisdiction over this action pursuant to 28 U.S.C. §§1331

---

[3]Plaintiff's complaint also named Frackville Borough and Frackville Borough Police Department as defendants in addition to Livergood. However, by stipulation dated April 12, 2017, plaintiff dismissed without prejudice Frackville Borough and Frackville Borough Police Department as defendants. *See* Doc. 15. As such, the claims against Frackville Borough and Frackville Borough Police Department contained in plaintiff's complaint are not discussed herein.

[4]To the extent that plaintiff seeks punitive damages against defendant Livergood in his official capacity, he is precluded from doing so. It is well settled that the Supreme Court has held punitive damages may not be awarded against municipalities under §1983. *See* City of Newport v. Fact Concerts, Inc., 453 US 247, 271 (1981).

and 1343, and it can exercise pendent jurisdiction over the state law claims under 28 U.S.C. §1337. Venue is proper in this district.[5]

## III.    DISCUSSION

### *A. Malicious Prosecution Claim under Fourteenth Amendment*

In Count Two, plaintiff asserts a §1983 malicious prosecution claim under the Fourteenth Amendment procedural due process clause against defendant. Defendant argues, in part, that he is entitled to qualified immunity with respect to plaintiff's federal claims.

The doctrine of qualified immunity provides that government officials performing "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Reichle v. Howards, —— U.S. ——, 132 S.Ct. 2088, 2093 (2012) ("Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."). Qualified immunity provides not only a defense to liability, but "immunity from suit." Hunter v. Bryant, 502 U.S. 224, 227 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

---

[5]Since the parties state the correct legal standard for a summary judgment motion in their briefs, the court will not repeat it herein.

To determine whether defendant is entitled to qualified immunity, the court must analyze two factors: 1) whether the plaintiff has shown facts that make out a constitutional rights violation, and if so, 2) whether those rights were "clearly established" at the time of the incident. Pearson v. Callahan, 555 U.S. 223, 232 (2009); *see also* Perez v. Borough of Berwick, 507 Fed.Appx. 186, 192 (3d Cir. 2012) ("To determine whether the individual officers are entitled to qualified immunity, the District Court [is] required to consider whether, under the factual scenario of this case, the officers were reasonable to believe that their actions did not violate the [plaintiff's] clearly established rights.").

Recently, the court in Thomas v. City of Phila., 290 F.Supp.3d 371 (E.D.Pa. 2018), considered whether police officers were entitled to qualified immunity from a §1983 claim for malicious prosecution in violation of procedural due process under the Fourteenth Amendment. The court in Thompson, id. at 381, noted that "the Third Circuit Court of Appeals has not actually decided whether such a procedural due process right exists." The court stated that "[i]n order to hold a government official liable under §1983, the right claimed by the plaintiff must have been clearly established at the time of the alleged violation." Id. at 382 (citations omitted). The court in Thompson, id., then concluded that "[t]he procedural due process right against malicious prosecution is not clearly established" since "[t]he Supreme Court has not yet articulated such a right", "[a]nd the Third Circuit Court of Appeals stopped short of deciding the right's 'viability' in 2014." Therefore, the

court Thompson, id. at 383, held that "the individual defendants have qualified immunity from a claim for malicious prosecution in violation of the procedural due process clause."

The court in the instant case concurs with the court in *Thompson* and finds that defendant Livergood is entitled to qualified immunity with respect to plaintiff's malicious prosecution claim under the Fourteenth Amendment procedural due process clause. *See* Wiggins v. McAndrew, 2018 WL 3727389, *6-*7 (M.D.Pa. Aug. 6, 2018) (this court dismissed with prejudice plaintiff's 14th Amendment procedural due process malicious prosecution claim because the county sheriff was entitled to qualified immunity regarding such claim since there is not a clearly established right) (citing *Thomas, supra*).

### B. Malicious Prosecution Claim under Fourth Amendment

Defendant also moves for summary judgment with respect to plaintiff's Fourth Amendment claim alleging that he maliciously prosecuted plaintiff after he re-filed the criminal charges.

It is well-settled that "[t]o prove malicious prosecution [under §1983]... a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor*;* (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Estate of Smith v. Marasco, 318 F.3d

497, 521 (3d Cir. 2003); Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009);
Piazza v. Lakkis, 2012 WL 2007112, \*7 (M.D.Pa. June 5, 2012) (citation
omitted). "[A] claim for malicious prosecution 'permits damages for
confinement imposed pursuant to legal process.'" Piazza v. Lakkis, 2012 WL
2007112, \*8 (citations omitted). Further, "a claim for malicious prosecution
seeks to remedy 'the deprivation of liberty accompanying prosecution, not
prosecution itself.'" Id. (citations omitted). In order for plaintiff to prevail on his
malicious prosecution claim under §1983, he must satisfy each of the above
stated elements. Kossler v. Crisanti, 564 F.3d at 186. Ward v. Noonan, 147
F.Supp.3d 262, 281 (M.D.Pa. 2015) ("If Plaintiffs have not proffered evidence
sufficient to create a triable issue of fact as to all five prongs, their malicious
prosecution claim must fail as a matter of law.") (citations omitted). A state law
claim of malicious prosecution has the stated elements one to four but not
five. *See* Collins v. Christie, 337 Fed.Appx. 188, 194 (3d Cir. 2009).

No doubt that Livergood initiated a criminal proceeding against plaintiff
when he re-filed the theft related charges on March 6, 2015, and that the
criminal proceeding ultimately ended in plaintiff's favor on these charges when
Judge Dolbin dismissed the case. In particular, the court finds that plaintiff
has shown that "the circumstances - both the offenses as stated in the statute
and the underlying facts of the case - indicate that the judgment as a whole"
reflects the plaintiff's innocence of the charges, then the plaintiff has
established the favorable termination element. *See* Kossler v. Crisanti, 564
F.3d at 188. Thus, the court finds that plaintiff has shown that the criminal

proceedings terminated in his favor. *See* [Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002)](#)

Further, while the parties disagree if disputed material facts exist with respect to whether Livergood had probable cause to re-charge the plaintiff and whether Livergood acted maliciously or for a purpose other than bringing the plaintiff to justice, the court will first discuss whether plaintiff was seized by Livergood as a consequence of a legal proceeding.

In his complaint, (Doc. 1, ¶'s 72-73), plaintiff alleges that he suffered a deprivation of his liberty consistent with the concept of a seizure as a consequence of the criminal proceeding Livergood instituted against him without probable cause. Specifically, plaintiff alleges that "[a]s a result of Livergood filing the 3/6/15 Complaint and all of his acts and/or omissions, [he] was subject to a seizure because he was subject to bail, had to undergo fingerprinting and processing, forced to take temporary lodging and accommodation so he could attend all court proceedings in Schuylkill County, suffered great economic hardship, damage to his reputation, and loss of his liberty."

The court finds that plaintiff cannot make out the fifth element required for a Fourth Amendment malicious prosecution claim. At issue is whether plaintiff was sufficiently seized by Livergood after Livergood filed the same set of charges against him on March 6, 2015. The record shows that after the charges were re-filed, Livergood did not contact either plaintiff or his counsel about the charges. In fact, as Judge Doblin stated in his March 7, 2016

opinion, "[Chief Livergood's] attempts to locate [plaintiff] to inform him of the second criminal complaint were limited." Rather, plaintiff discovered on his own that defendant Livergood had re-filed the charges against him, and he voluntarily returned from California to Frackville to face the charges. Upon his return, plaintiff surrendered himself before Magistrate Hale on September 2, 2015, for an arraignment. Magistrate Hale released plaintiff on $5,000 bail and allowed plaintiff to post 10% of it. Magistrate Hale also imposed conditions of bail, including the following requirements: plaintiff had to appear at all court proceedings until his case was finished; plaintiff had to obey all orders of the bail authority; plaintiff had to provide his current address and notify the court and district attorney of any change of address; plaintiff could not intimidate or retaliate against any witness in his case; plaintiff had to refrain from any criminal activity; and plaintiff had to comply with any fingerprint order that the court issued. (Doc. 24-7).

Following, plaintiff's arraignment, he posted $500 bail and was allowed to leave Magistrate Hale's office.

Plaintiff's preliminary hearing regarding the March 6, 2015 criminal complaint was initially scheduled for October 7, 2015, however, it was continued and held on November 25, 2015 before Magistrate Hale. Plaintiff appeared for his preliminary hearing as required by his bail conditions. At the conclusion of the hearing, Magistrate Hale bound over all of the charges against plaintiff to county court except for the tampering charge. Magistrate Hale also reduced plaintiff's bail after the hearing to $5,000 unsecured, i.e.,

no requirement for plaintiff to post any money, noting that plaintiff appeared for his hearing on his own. (Doc. 31-1 at 100-101).

As such, the record shows that plaintiff was never taken into custody, never arrested, never handcuffed, and never detained after defendant re-filed the charges against him. Regardless, plaintiff contends that "[t]he Third Circuit has held that a defendant who was never arrested or detained or handcuffed may nonetheless be 'seized' as a consequence of a legal proceeding." He cites to Gallo v. Phila., 161 F.3d 217 (3d Cir. 1998). However, over the 20 years since *Gallo* was decided, numerous courts, have considered the evidence required for purposes of a Fourth Amendment malicious prosecution claim to show that the plaintiff suffered a sufficient deprivation of liberty as a consequence of a legal proceeding.

No doubt that a plaintiff's arrest alone is not sufficient to constitute a seizure for purposes of a §1983 malicious prosecution claim if it occurred prior to his arraignment. Rather, the court must only focus on whether plaintiff McCormack was seized after he appeared before Magistrate Hale on September 2, 2015. A defendant's detainment by police officials prior to his arrest and the lodging of the charges against him "is not a basis for a malicious prosecution claim." Roberts v. Caesar's Entertainment, Inc., 72 F.Supp.3d 575, 581 (E.D.Pa. 2014). The initial seizure of a defendant at the time of his arrest is governed by the Fourth Amendment, and the Fourth Amendment "protection against unlawful seizures then extends only until trial." Halsey v. Pfeiffer, 750 F.3d 273, 291 (3d Cir. 2014) (citations omitted). *See*

16

*also* Torres v. McLaughlin, 163 F.3d 169, 174 (3d Cir.1998) (Third Circuit stated that "we refer to the Fourth Amendment as applying to those actions which occur between arrest and pre-trial detention.").

Plaintiff appears to argue that his evidence is sufficient to establish that he suffered a deprivation of liberty to allow his malicious prosecution claim to proceed since he suffered damages from lost wages in the amount of $64,281, he was forced to leave his home in California to defend himself in Schuylkill county for about 10 months, he paid legal fees for his criminal defense, he posted bail money and, he had to pay various out-of-pocket expenses during this time.

Here, plaintiff was not arrested by defendant as he voluntarily returned from California and surrendered himself when he appeared before Magistrate Hale for his arraignment on September 2, 2015. In fact, after defendant re-filed the charges against plaintiff, plaintiff was not ever arrested or detained by authorities in California. Also, plaintiff was not extradited from California to face the charges against him in Frackville. (Doc. 24-2 at 18-19). Following his arraignment, there were some minor restrictions that were imposed on plaintiff, however, he was initially released on $5,000 bail secured by posting 10% of the money. Further, there is no evidence that plaintiff was handcuffed at any time and there is no evidence that he was taken into police custody for processing and fingerprinting.

Additionally, plaintiff was not seized or taken into custody at any time after his arraignment to the time of his preliminary hearing. After his hearing,

the record reflects that plaintiff was released on $5,000 unsecured bond, and thus he was not required to post any bail. Nor was he required to report to pretrial services. Further, plaintiff was not subjected to any travel restrictions pending his criminal proceedings in county court. Plaintiff testified that after his arraignment he stayed with family in New Jersey. Although, plaintiff was required to attend court hearings, there is no evidence that he was under any significant restrictions. The criminal charges against plaintiff were then dismissed by Judge Dolbin on March 7, 2016, before plaintiff was brought to trial.

In Ward, 147 F.Supp.3d at 282, the court explained the fifth element necessary to establish a malicious prosecution claim as follows:

> When a malicious prosecution claim is brought under the Fourth Amendment, "the plaintiff [must have] suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007). This fifth element distinguishes Fourth Amendment malicious prosecution claims from Pennsylvania common law malicious prosecution. *See* Collins v. Jones, 2015 WL 790055 *4 n. 10 (E.D.Pa. February 24, 2015). "Pretrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure." DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005) (no seizure resulted where plaintiffs were issued only a summons and did not have to post bail). In Gallo v. City of Philadelphia, 161 F.3d 217 (3d Cir. 1998), the plaintiff was seized when he was required to post $10,000 bond, attend all court hearings, contact pretrial services weekly and was prohibited from traveling outside of a two state area. In *Johnson*, a seizure was found where the plaintiff was detained for approximately two days prior to making bail, and was also required to return in six weeks for a hearing. 477 F.3d 75.

In Schneyder v. Smith, 653 F.3d 313, 321-22 (3d Cir. 2011), the Third

Circuit adopted the "continuing seizure" theory and held that "[w]hen the state places constitutionally significant restrictions on a person's freedom of movement for the purpose of obtaining his presence at a judicial proceeding, that person has been seized within the meaning of the Fourth Amendment."

Subsequently, in Black v. Montgomery County, 835 F.3d 358, 367 (3d Cir. 2016), the Third Circuit explained that under the "continuing seizure" theory, "[p]re-trial restrictions of liberty aimed at securing a suspect's court attendance are all 'seizures' ... [because] the difference between detention in jail, release on bond, and release subject to compliance with other conditions is in the degree of resolution on the individual's liberty, not in the kind of restriction." (citing Schneyder, 653 F.3d at 320). However, in both Schneyder, 653 F.3d at 321 n.12, and Black, 835 F.3d at 367 n. 7, the Third Circuit noted that "[w]e hold open the possibility that some conditions of pre-trial release may be so insignificant as to not implicate constitutionally protected liberty interests."

In Heilimann v. O'Brien, 2017 WL 898160, *6 (M.D.Pa. March 7, 2017), the court considered whether pre-trial limitations imposed on the plaintiff, similar to the ones imposed on plaintiff McCormack, amounted to a deprivation of liberty consistent with a Fourth Amendment seizure. After the plaintiff in Heilimann was arrested, he was handcuffed and had one leg shackled to a bench, and he was later taken to the Monroe County Correctional Facility. The plaintiff was then released from incarceration on unsecured bail and he was only required to attend court proceedings. The

19

court in Heilimann, id., stated, "Plaintiff maintains that he suffered four pretrial restrictions: (1) release on unsecured bail bond; (2) appear at all subsequent court hearings; (3) obey all further orders of the bail authority; and (4) provide written notice of any change of address within forty-eight (48) hours of the day of the change." (footnotes omitted). The court found that the stated pretrial restrictions did not amount to a deprivation of plaintiff's liberty. Id. The court considered that the plaintiff was released on an unsecured bail bond and did not have to deposit any money for his release from incarceration. The court also found that plaintiff's bail condition requiring that he appear at all subsequent court hearings did not amount to a deprivation of liberty, especially since there was no evidence indicating that "the bail authority ever imposed additional orders rising to a level of something more." Finally, the court found that plaintiff Heilimann, like the plaintiff in DiBella, 407 F.3d at 603, "was never required to contact pretrial services prior to trial, nor was he prohibited from travelling." Id. at *7.

In the present case, there was no actually physical restraining of plaintiff McCormack. Nor was plaintiff detained or incarcerated at any time due to the re-filing of the charges by Livergood through the time of his arraignment and the eventual dismissal of the charges against him. Even though plaintiff was initially required to post $500 bail, he was never detained and his bail was later made unsecured eliminating any requirement to post any money or other form of security. Also, as in *Heilimann*, the court finds that the requirement obliging McCormack to appear at all court proceedings does not amount to

20

a deprivation. Further, like *Heilimann*, McCormack was never required to contact pre-trial services and he was not prohibited from traveling.

The court finds that the *Gallo* case, upon which plaintiff relies, is distinguishable from his case since he was not required to contact pretrial services weekly and since he was not prohibited from traveling outside of the state. In fact, plaintiff could travel anywhere, including back to California if he wanted, and he merely had to report his change of address to the court and the prosecutor. Additionally, while plaintiff originally had to post $500 bail, 10% of $5,000, when he was arraigned, the *DiBella* case is largely on point. In *DiBella*, the plaintiff did not post bail, but he was free to travel, and was not required to report to pretrial services. Further, in *DiBella*, the plaintiff's only obligation was to attend court hearings. The Third Circuit held that this was insufficient to constitute a seizure as a result of a legal proceeding.

Thus, the court finds that plaintiff McCormack's stated conditions of pre-trial release were insignificant and did not constitute a deprivation of liberty of constitutional dimensions. *See Heilimann, supra*.

Based on all of the stated surrounding circumstances of this case, the court finds that plaintiff McCormack was not seized as a result of the commencement of the legal proceeding by Livergood. Since the plaintiff cannot prove that he suffered a deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding initiated by defendant Livergood, the defendant's motion for summary judgment with respect to plaintiff's Fourth Amendment malicious prosecution claim will be

granted.

### C. State Law Claims

Finally, considering judicial economy, convenience and fairness to the litigants, the district court in its discretion is permitted to decline the exercise of supplemental jurisdiction over state law claims if the court has dismissed all of the claims over which it had original jurisdiction. Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009) (citations omitted). *See* Patel v. Meridian Health System, Inc., 666 Fed.Appx. 133, 136 (3d Cir. 2016) ("A district court 'may decline to exercise supplemental jurisdiction' over state law claims if it 'has dismissed all claims over which it has original jurisdiction[,]' unless considerations of judicial economy, convenience, or fairness to the parties provide an affirmative justification for exercising supplemental jurisdiction.") (citing Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000). The court has made the appropriate considerations and finds no extraordinary circumstances exist in this case to exercise supplemental jurisdiction over plaintiff's remaining state law claims against Livergood for malicious prosecution and IIED contained in Count Five and Count Six. Since plaintiff's federal claims over which this court had original jurisdiction shall not be permitted to proceed to trial, the court, in its discretion, declines to exercise supplemental jurisdiction over plaintiff's state law claims, Counts Five and Six, against defendant Livergood. *Id.; see also* 28 U.S.C. §1367(c)(3); Verdecchia v. Prozan, 274 F.Supp.2d 712, 728 (W.D. Pa. 2003).

As such, plaintiff's state law claims shall be dismissed without prejudice.

Kach, 589 F.3d at 650 ("If a district court decides not to exercise supplemental jurisdiction and therefore dismisses state-law claims, it should do so without prejudice, as there has been no adjudication on the merits.") (citation omitted).

## IV.    CONCLUSION

The defendant's motion for summary judgment, (Doc. 22), with respect to Counts One and Two of the plaintiff's complaint, (Doc. 1), is **GRANTED**. The court declines to exercise supplemental jurisdiction over plaintiff's state law claims contained in Counts Five and Six against defendant Livergood, and these claims are **DISMISSED WITHOUT PREJUDICE**. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: November 7, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2017 MEMORANDA\17-0407-01.wpd